# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: May 19, 2022
Date Decided:  June 6, 2022

Theodore A. Kittila, Esq.
James G. MacMillan, III, Esq.
HALLORAN FARKS + KITTILA LLP
Wilmington, Delaware

Eric M. George, Esq.
Kim S. Zeldin, Esq.
BROWNE GEORGE ROSS LLP
Los Angeles, California

Robert K. Beste, Esq.
Jason Z. Miller, Esq.
Smith, Katzenstein & Jenkins LLP
Wilmington, Delaware

Marvin S. Putnam, Esq.
Jessica Stebbins Bina, Esq.
R. Peter Durning, Jr., Esq.
LATHAM & WATKINS LLP
Los Angeles, California

RE:  *Surf's Up Legacy Partners, LLC et al. v. Virgin Fest, LLC, et al.*
     C.A. No. No19C-11-092

Dear Counsel:

This Letter Order addresses the Defendants' Exceptions to the Special Master's May 6, 2022 Ruling on Surf's Up Motion to Maintain Highly Confidential Designations (D.I. 210). For the reasons explained below, the Exceptions are **OVERRULED** and the Special Master's Ruling is **ADOPTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE CONFIDENTIALITY ORDER

After the Special Discovery Master entered this case in March 2021,[1] the parties stipulated to a Confidentiality Order in April 2021.[2]

The Confidentiality Order allows a Producing Party to designate any Discovery Material as "Confidential" if such party in good faith believes that such Discovery Material contains non-public, confidential, proprietary, or commercially sensitive information and that good cause exists for confidential treatment. "Good cause" for confidential treatment exists only if the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause.

Alternatively, any Producing Party may designate any Discovery Material as "Highly Confidential" if such party in good faith reasonably believes that disclosure of the Discovery Material other than as permitted pursuant to Paragraph 6 of the Order is substantially likely to cause injury to the Producing Party and that designation of such Discovery Material as Confidential Discovery Material would

---

[1] D.I. 88; *see also* Order of Reference to Special Discovery Master (D.I. 96); Entry of Appearance of Michael A. Weidinger (D.I. 120).

[2] Confidentiality Order (D.I. 127).

be insufficient to protect the interests of the Producing Party. Paragraph 6 provided the limited classes of individuals to whom Highly Confidential Discovery Material may be disclosed. In effect, Highly Confidential functions as an "attorneys' eyes only" designation, precluding disclosure to the parties' principals and limiting it to counsel (including in-house counsel) and those working with such counsel on the case, among others necessary for the normal prosecution of litigation.

Finally, the Order provided that Superior Court Civil Rule 5(g) shall govern all challenges to a Party's designation of documents or information as Confidential or Highly Confidential. Under Civil Rule 5(g), good cause must be shown to maintain documents under seal.[3]

## B. CURRENT DISCOVERY DISPUTE

On March 11, 2022, Defendants Virgin Fest, LLC, VFLA Eventco, LLC, and KSD Ownco, LLC challenged "plaintiffs' and counterclaim defendants' designation of any and all documents as highly confidential under the Court's April 21, 2021 confidentiality order."[4] In response, Plaintiffs and Counterclaim Defendants (collectively, Surf's Up") filed a Motion to Maintain Highly Confidential

---

[3] *See* Del. Super. Ct. Civ. R. 5(g).

[4] Challenge to Designation of Documents as Highly Confidential (D.I. 199).

Designations on March 22, 2022.[5]  The Special Master heard argument on April 8, 2022.[6]

On May 6, 2022, the Special Master issued a written decision resolving the Motion.[7]  As background, the Special Master explained that Surf's Up had previously sought to redact the names of its investors from documents it produced to Virgin Fest, which the Special Master rejected in favor of allowing Surf's Up to designate the material as it saw fit in good faith in accordance with the Confidentiality Order—a ruling the Court upheld over Surf's Up's objections.[8]  With exceptions described as inadvertent mistakes due to the large volume of production, Surf's Up designated documents disclosing the identity of its investors as Highly Confidential.  Virgin Fest's challenge sought to re-classify the documents as Confidential, which would allow them to be shared generally within the Virgin Fest organization including its "directors, officers, employees, general partners, and limited partners of the Parties, or any subsidiary or affiliate thereof."[9]

---

[5]  Pls.' Mot. to Maintain Highly Confidential Designations (D.I. 200).

[6]  Special Master Ruling on Pls.' Mot. to Maintain Highly Confidential Designations at 1 (D.I. 209) (hereinafter, the "Special Master's Ruling").

[7]  *Id.*

[8]  *See id.* at 2 (citing *Surf's Up Legacy Partners LLC v. Virgin Fest, LLC*, 2021 WL 5049459 (Del. Super. Nov. 1, 2021)).

[9]  *Id.* at 2–3.

The Special Master summarized the parties' contentions. Surf's Up argued it needed to maintain the Highly Confidential designation because it reasonably believed Virgin Fest's management "would interfere with or usurp Surf's Up relationship with its investors."[10] Too, Surf's Up blamed Virgin Fest for stirring up other litigation against it that had been filed by its investors where Virgin Fest had knowledge of the identities of certain of those investors.[11] Conversely, Virgin Fest argued that Surf's Up failed to meet its burden to demonstrate that disclosure would be "substantially likely to cause injury" and that a "Confidential" designation would be sufficient.[12]

The Special Master determined that, in order for Surf's Up to establish good cause under Civil Rule 5(g), "the Court must be satisfied that a substantial likelihood exists that injury may occur and that Confidential designations are insufficient."[13] In determining whether Surf's Up met its burden, the Special Master explained he did not credit Surf's Up claim that Virgin Fest "allegedly stirred up and will continue to stir up other litigation by other investors against Surf's Up if Virgin Fest gains

---

[10]  *Id.* at 3.

[11]  *Id.* at 4.

[12]  *Id.*

[13]  *See id.* at 5.

access to the investor list."[14]  Still, the Special Master held Surf's Up met its burden

of showing good cause and granted Surf's Up motion:

> [I]t is undoubtedly the case that the identity of investors or investor lists of the type designated Highly Confidential by Surf's Up is the proper subject of confidential treatment under the Confidentiality Order. Moreover, Virgin Fest is a potential competitor for investors in the businesses in which it and its principals and Surf's Up engage.  There has already been a history of accusations of poaching of investors among the parties' principals.  Surf's Up concern is not unfounded, but arises in a hotly contested matter with fraud accusations running both ways and demonstrable animus flowing.  Once the investor names are known, there is no going back.  I am convinced that Highly Confidential designations are warranted.  The result would be different if the investor lists belonged to the Surf's Up entities.  The Surf's Up entities are defunct and therefore not in competition for the investors' funds and will not be harmed by any interference with the investor relations that might result from the disclosure widely within Virgin Fest.  But, when questioned at the hearing on the subject, counsel advised the lists "belong to Mr. Gordon and Mr. Wolkov. They are their individual lists".  To protect their interest in the confidentiality of their private investor lists, Surf's Up may maintain the current designation.[15]

Furthermore, the Special Master rejected Virgin Fest's suggestion that "the use

restriction within the Confidentiality Order is sufficient because it precludes use

outside the litigation that Surf's Up is worried about, poaching and interfering with

investor relations, even for documents designated only 'Confidential.'"[16]

---

[14]  *Id.* at 5–6.

[15]  *Id.* at 6–7 (internal citations omitted).

[16]  *See id.* 8–9.

Virgin Fest filed its Exceptions to the Special Master's May 6th Ruling.[17] And Surf's Up has now filed its opposition.[18]

## II. STANDARD OF REVIEW

A Special Master's Report is subject to *de novo* review by this Court.[19]

## III. ANALYSIS

After careful *de novo* review of the Special Master's Ruling, the Court adopts it in whole.

The first issue is the standard to be applied in reviewing Virgin Fest's challenge to the Highly Confidential designation and Surf's Up Motion. The Confidentiality Order allows Producing Party to designate any Discovery Material as Highly Confidential if such party in good faith reasonably believes that disclosure of the Discovery Material is substantially likely to cause injury to the Producing Party and that designation of such Discovery Material as Confidential would be insufficient to protect the interests of the Producing Party. All challenges to a party's designation of documents or information as Confidential or Highly Confidential are governed by Civil Rule 5(g); that rule provides that good cause must be shown for

---

[17]    Virgin Fest's Exceptions to the Special Master's May 6, 2022 Ruling (D.I. 210).

[18]    Pls.' Answering Br. in Opp. to Virgin Fest's Exceptions (D.I. 215).

[19]    Del. Super. Ct. Civ. R. 122(c).

the Court to order filings or documents be maintained under seal. From the Confidentiality Order and Civil Rule 5(g), the Special Master correctly distilled the applicable standard: Surf's Up must show good cause to maintain the designation of its investors' identities as Highly Confidential, and to show good cause, Surf's Up must show that disclosure of the investors' identities is substantially likely to cause injury to Surf's Up and that designating their identities as Confidential would be insufficient to protect Surf's Up's interests.[20]

As support for its Motion, Surf's Up submitted declarations of counterclaim defendants Bryan Gordon and Seth Wolkov (collectively, "Declarants") under 10 *Del. C.* § 3927.[21] Mr. Gordon and Mr. Wolkov are Surf's Up former CEO and

---

[20] Surf's Up maintains that it can meet its good cause burden simply by having a good faith reasonable belief that disclosure is substantially likely to cause injury and that Confidential designations are insufficient. *See* Special Master's Ruling at 4–5; Pls.' Answering Br. in Opp. to Virgin Fest's Exceptions at 2 n.2. The Special Master correctly rejected Surf's Up position. This Court has recently had occasion to review the "fundamental right [of United States' citizens] . . . to an open court system," a principle that "translates into a presumption that the press and public have a common law right of access to judicial proceedings and court records." *See Optical Air Data Sys., LLC v. L-3 Commc'ns Corp.*, 2020 WL 710264, at *1 (Del. Super. Ct. Feb. 7, 2020) (internal citations omitted). "One manifestation of the common law right of access is Superior Court Civil Rule 5(g)," under which the "default position" is public accessibility of filed documents. *See id.* (internal citations omitted). In light of these principles, it would not be appropriate to seal court documents based solely on one party's belief that such a seal is necessary, even if the party holds that belief in good faith. "[T]hat good faith belief, although critical, will not carry the day alone without convincing the Court such reasonable belief is well-founded and the information requires Highly Confidential designations." *See* Special Master's Ruling at 5.

[21] *See* Pls.' Mot. to Maintain Highly Confidential Designations, Exs. A & B. Because the declarations are substantively identical, the Court will hereafter cite only to Exhibit A—Mr. Gordon's declaration.

President, respectively. Declarants explained that they serve "dozens of private investors, mostly high-net-worth individuals and family offices."[22] Many of these investors "guard their privacy carefully—this is proprietary information."[23] Declarants say their "livelihood is dependent on those relationships" and the relationships will "likely" be lost if their contact information is compromised.[24] Declarants also claim that disclosure of this information to Virgin Fest would violate their subscription agreements with their investors, exposing Declarants to litigation from investors that would harm Declarants financially and reputationally.[25]

Declarants averred that the investors' identities are "known to very few people and were not even disclosed to KAABOO's board, including then-board member Jason Felts, who represented Virgin Fest"—Declarants' "competitor"[26]—"and who also served as KAABOO's Chief Marketing Officer."[27] Virgin Fest, now under the control of Jason Felts and his business partner Mark Hagle, "wants very badly to know the identities of Surf's Up's investors so that it can drive a wedge into those

---

[22]   *See id.*, Ex. A at ¶ 2.

[23]   *Id.*, Ex. A at ¶ 6.

[24]   *See id.*, Ex. A at ¶ 7.

[25]   *Id.*, Ex. A at ¶ 9.

[26]   *Id.*, Ex. A at ¶ 6.

[27]   *Id.*, Ex. A at ¶ 11.

relationship."[28]    Declarants explain there is a "history" of bad blood between themselves and Felts, who "has accused [them] of poaching one of Virgin Fest's potential investors, William Hutchinson, and his company, Dunhill Partners."[29] "After Hutchinson made an investment in the KAABOO Texas festival directly rather than into Virgin Fest, Felts cried foul, accusing us of 'circumventing' Virgin Fest's relationship with Dunhill Partners."[30]

The Court finds that Surf's Up has met its burden of showing good cause to maintain the Highly Confidential designation for the identity of its private investors.[31]

First, Surf's Up has established that disclosure of the investors' identities is substantially likely to cause injury to Declarants.  Declarants have sworn under the penalties of perjury that their livelihoods depend on the long-standing relationships of trust and confidence they maintain with their investors and that those relationships would be lost if the investors' identities were disclosed.  Indeed, disclosure to Virgin Fest is particularly likely to cause them substantial harm.  Declarants not only

---

[28]    *Id.*, Ex. A at ¶ 12.

[29]    *Id.*, Ex. A at ¶ 13.

[30]    *Id.* at ¶ 13.

[31]    It appears undisputed that the investors' identities constitute "non-public, confidential, proprietary, or commercially sensitive information"—a prerequisite for any confidential treatment under the Confidentiality Order. *See* Confidentiality Order at 2.

compete with Virgin Fest for the same class of investors, but also have a clear history of personal animosity with certain principals of Virgin Fest. The Special Master correctly noted that a different result may obtain if the investor lists belonged to the Surf's Up entities themselves, which are defunct, not in competition for the investors' funds, and unlikely to suffer any meaningful injury if the investor lists were disclosed widely with Virgin Fest.[32] But the investor lists belong to Mr. Gordon and Mr. Wolkov personally, both of whom continue to serve the investors and stand to suffer substantial harm if their identities were widely disclosed within Virgin Fest.

Second, Surf's Up established that designating the investors' identities as Confidential would be insufficient to protect its interests. A Confidential designation would allow their identities to be disclosed generally within Virgin Fest, including among the principals discussed previously. And as the Special Master correctly noted, "[o]nce the investor names are known, there is no going back."[33] Underscoring the need for Highly Confidential treatment is the fact that the investors' identities weren't ever disclosed to KAABOO's board—even before the relationship between Surf's Up and Virgin Fest soured, Declarants were doing their

---

[32] *See* Special Master's Ruling at 7.

[33] *Id.*

utmost to maintain confidentiality. Designating the information as Highly Confidential—"attorneys' eyes only"—is therefore appropriate under the specific facts of this dispute.

Virgin Fest objects that "Surf's Up speculation that Virgin Fest's principals *might* interfere with its relationship with those investors does not establish that release of the investor identities to Virgin Fest is 'substantially likely to cause harm.'"[34] Virgin Fest goes further: "Surf's Up offered *no facts* showing a substantial likelihood of injury."[35] Not so.

Surf's Up submitted particularized facts regarding Declarants' confidential relationship with their investors and the reasons why general disclosure to Virgin Fest is particularly likely to damage those relationships. To be sure, Surf's Up warnings of future harm involve an element of speculation. But all averments of future harm, by necessity, do. Under these facts, Surf's Up has said enough.

Virgin Fest claims the Court has already made a "finding" that Surf's Up can offer only "unsupported speculation," pointing to the Court's Letter Order from November 2021.[36] Virgin Fest goes a bit too far here. In its November 2021

---

[34] Virgin Fest's Exceptions at 2.

[35] *Id.*

[36] *See id*. at 2–3 (citing *Surf's Up*, 2021 WL 5049459 at *3).

decision, the Court rejected Surf's Up request that it be allowed to redact completely the names and identifying information of its investors in documents it agreed to produce to Virgin Fest. The Court explained that the "alleged harm that Gordon and Wolkov will suffer should the identities of the investors be revealed to the public" was "no reason to withhold discoverable information" from Virgin Fest under Delaware's rules of discovery.[37] The appropriate solution to Surf's Up concerns was not to withhold the information altogether, but rather for Surf's Up to "avail itself to the protections of the Confidentiality Order"[38]—an Order that was "Surf's Up's idea" in the first instance.[39] Thus, the Court ruled only that Surf's Up's allegations of future harm were not grounds to bar Virgin Fest from discovering their identities. Whether Surf's Up's allegations are sufficient to warrant protection of the now-produced discovery under the Confidentiality Order is a different question. The Court expressly said as much when it invited Virgin Fest to "challenge Surf's Up's designation [under the Confidentiality Order] if Virgin Fest believes it lacks merit."[40]

---

[37]  *See id.* at 2.

[38]  *See id.* at 3.

[39]  *Id.*

[40]  *Id.*

Similarly, Virgin Fest claims Surf's Up offers mere speculation to support its claim that a Confidential designation would be insufficient. According to Virgin Fest, a Confidential designation would address Surf's Up concerns because it would require Virgin Fest to use the information "solely for purposes of this Litigation . . . and not for any other purpose."[41] In response to this argument, the Special Master correctly noted that the parties stipulated to a two-tier Confidentiality Order and "Virgin Fest therefore did not object to the additional burdens that Highly Confidential designations might impose when it agreed to such a form of order."[42] In other words, even if initially resisted, the parties came to recognize that discovery may require the production of information of such sensitivity that the only means of safeguarding it would be to prevent certain individuals from viewing it altogether. "[I]f the use limitation protection that is contained in a single-tier order were always sufficient, then parties and the Court would never enter two-tier stipulations or orders in the first place. Surf's Up has limited its Highly Confidential designations to a single, narrow category of information—the identity of its private investors and it has shown good cause to maintain the use of such designations."[43] Simply put,

---

[41] *See* Virgin Fest's Exceptions at 4–5 (citing Confidentiality Order at 10).

[42] *See* Special Master's Ruling at 8–9.

[43] *Id.* at 9.

Mr. Gordon and Mr. Wolkov will not be required to make their most sensitive proprietary information available to their competitors in the context of a "hotly contested matter with fraud accusations running both ways and demonstrable animus flowing."[44]

Finally, Virgin Fest warns that adopting the Special Master's decision "will cause more work for the Court in the form of unnecessary litigation and discovery disputes."[45] As if needed at this point, Virgin Fest reminds the Court that it has "consistently objected and maintained that no information is worthy of [Highly Confidential] designations."[46] Although Virgin Fest "agreed to a two-tiered approach because it was free to challenge any Highly Confidential designations," the Special Master's Ruling effectively "used that agreement against Virgin Fest."[47] According to Virgin Fest, "accept[ing] the Special Master's use of an agreement to a two-tiered order against a party who loudly and strenuously objected to any Highly Confidential designations and a second tier in the order . . . would be encouraging,

---

[44] *Id.* at 6.

[45] Virgin Fest's Exceptions at 7.

[46] *Id.* at 8.

[47] *Id.* at 8–9 (citing Special Master's Ruling at 9 ("Here, however, the parties stipulated to the use of a two-tier form order to protect Highly Confidential information. Virgin Fest therefore did not object to the additional burdens that Highly Confidential designations might impose when it agreed to such a form of order.")).

and likely forcing, litigants to always dispute the type of confidentiality that is appropriate for a case from the outset, causing undue burden to the Court."[48]

Not if the parties—and their counsel—are reasonable from the outset.

Neither the Special Master in the first instance, nor the Court, has or will used Virgin Fest's agreement against it. But both are applying the framework the parties together (even, if begrudgingly) constructed.

Virgin Fest has always known that Surf's Up's primary reason for seeking a two-tier Confidentiality Order was its belief "that the identity of [Surf's Up's] investors requires a second tier."[49] Virgin Fest told Surf's Up it did not believe a two-tier Confidentiality Order would be "necessary or appropriate."[50] Nevertheless, Virgin Fest agreed to "put as much of this aside as possible and move forward."[51] True, Virgin Fest did acquiesce to a two-tier Confidentiality Order with the warning to Surf's Up that it "anticipate[d] challenging any designations of material as highly confidential." So Virgin Fest's was well aware that the Court could find agree particular discovery material warrants that very designation both parties—for each's own reasons—decided to put on the table.

---

[48] *Id.* at 9.

[49] Virgin Fest's Answering Br. in Response to Surf's Up's Exceptions, Ex. C at 2 (D.I. 158).

[50] *Id.*

[51] *Id.*

And even without such agreement, if left to the Court's own device, the two-tiers would have been imposed as there is good cause under the specific facts presented here for such treatment. Thus, the Court hopes the parties will use the procedures devised here reasonably. The Court is confident that future parties will not be dissuaded from engaging such where it makes sense in their cases.

## IV. CONCLUSION

For the foregoing reasons, the Court agrees with the Special Master, and **ADOPTS** the Special Master's Ruling on Surf's Up Motion to Maintain Highly Confidential Designations. And, therefore, the Court **DENIES** Virgin Fest's Exceptions to the Special Master's Ruling.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary

cc: All Counsel via File and Serve